■ THOMAS W. CURLEY, Respondent, v CONSOLIDATED RAIL CORPORATION, Appellant and Third-Party Plaintiff-Appellant. EXCELSIOR TRUCK LEASING COMPANY, Third-Party Defendant-Respondent.—Judgment, Supreme Court, New York County (Hugh Gilbert, J., and a jury), entered July 25, 1990, in favor of plaintiff and against defendant in the sum of $989,058.17, and dismissed the third-party complaint, is modified, on the law, to the extent of vacating the judgment and verdict in favor of the plaintiff against defendant, and dismissing the complaint, and otherwise affirmed, without costs.

Since 1978, Mr. Thomas W. Curley (Officer Curley) had been employed by Consolidated Rail Corporation (Conrail) as a police officer, and in March 1984, he was assigned to Conrail's police station located at West Haverstraw, New York, where he worked the 4:00 P.M. to midnight tour.

On March 6, 1984, at approximately 9:50 P.M., while on routine motor patrol, in Car 360, Officer Curley was driving, at a speed of between 40 and 45 miles per hour, south on Route 9W from Bear Mountain. Suddenly, as he was proceeding down a slight incline, the vehicle abruptly stopped, skidded on the pavement, throwing him forward and across the driver's seat. As a result of the incident, Officer Curley alleges he suffered injuries to his back.

By summons and complaint, in August 1984, Officer Curley (plaintiff) commenced, pursuant to the Federal Employers' Liability Act (45 USC § 51 *et seq.),* an action against Conrail (defendant) to recover damages for his injuries, in the Supreme Court, New York County. Thereafter, since defendant leased Car 360, which was a 1981 Ford LTD, from Excelsior Truck Leasing Company (Excelsior), it commenced a third-party action against Excelsior and the Ford Motor Company (Ford). Prior to trial, defendant discontinued the third-party action against Ford, with prejudice.

A jury trial resulted in a verdict in favor of the plaintiff against the defendant in the sum of $989,058.17, and in favor of the third-party defendant Excelsior on the third-party claim. Defendant appeals.

Since the plaintiff brought the instant action under the Federal Employers' Liability Act (FELA), "the proper standard of review is that which has been developed in FELA cases and not those applied in the usual common-law negligence actions" *(Richards v South Buffalo Ry. Co.,* 54 AD2d 310, 311 [1976]).

Repeatedly, the United States Supreme Court has held that under FELA "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought" *(Rogers v Missouri Pac. R. R. Co.,* 352 US 500, 506 [1957], *reh denied* 353 US 943 [1957]; *Atchison, Topeka & Santa Fe Ry. Co. v Buell,* 480 US 557, 561-562 [1987]).

While "[t]he standard of causation in an FELA action is a 'low and liberal' one" *(Smith v National R. R. Passenger Corp.,* 856 F2d 467, 469 [2d Cir 1988]), the United States Supreme Court, in *Atchison, Topeka & Santa Fe Ry. Co. v Toops* (281 US 351, 354-355 [1930]), has held unequivocally that a jury in a FELA case is not to engage in speculation in order to determine whether the negligence of the employer caused the injury. Specifically, that Court stated "[b]ut proof of negligence alone does not entitle the plaintiff to recover under the Federal Employers' Liability Act. The negligence complained of must be the cause of the injury. The jury may not be permitted to speculate as to its cause and the case must be withdrawn from its consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer" *(supra,* at 354-355). Further, the Court of Appeals has stated "if there is any principle of law that is too well settled to require extensive citation of authority, it is that a jury finding based on speculation is a nullity *(Lahr* v. *Tirrill,* 274 N. Y. 112, 117)" *(Feblot v New York Times Co.,* 32 NY2d 486, 494 [1973]).

Our examination of the trial transcript indicates that plaintiff's evidence of causation came from his own testimony, that of Conrail Police Officer James Libruk (Officer Libruk), and the deposition testimony of Conrail Police Officer Douglas Mendik (Officer Mendik). While plaintiff worked the 4:00 P.M.

to midnight tour, Officer Libruk worked the midnight to 8:00 A.M. tour, and Officer Mendik worked the 8:00 A.M. to 4:00 P.M. tour. During their tours, each one of the officers drove Car 360.

Officers Libruk and Mendik, as well as the plaintiff, testified that Car 360 was frequently being repaired, and, from time to time, all of them had experienced mechanical difficulties in operating that vehicle, and had complained about its performance. Further, plaintiff testified that, based upon information he received from an unnamed union representative, a police vehicle like Car 360 is kept in service between eighteen months and two years. Officer Libruk testified that, by late 1982, Car 360 had been driven approximately 140,000 miles, and Officer Mendik stated that he believed that the odometer on Car 360 had been rolled over twice.

The plaintiff was unable to give any specific reason, other than speculation, for the cause of the alleged accident, since he testified, on direct examination, that, before Car 360 abruptly stopped, he "didn't hear anything or feel anything. I was very relaxed * * * [and] I believe the wheels locked on me because I did skid. The car did skid * * * I felt it and I heard it". Further, plaintiff admitted, during cross-examination, that, after the accident and before the tow truck arrived, he believes he moved Car 360 forward and backward without any apparent difficulty.

Applying the legal authority, *supra,* to the facts of the instant case, we find that the plaintiff's only evidence, unsupported by any expert testimony, indicating that defendant's negligence caused his accident, consists of allegations that the subject vehicle had been frequently repaired, complained about, was more than eighteen months old, and had been driven thousands of miles. We further find that evidence insufficient as a matter of law, without speculation, to permit the jury to reasonably draw the inference "that the injury suffered was caused by the negligent act of the employer" *(Atchison, Topeka & Santa Fe Ry. Co. v Toops, supra,* at 355). In reaching our conclusion, we have given the plaintiff "the benefit of every reasonable inference which can reasonably be drawn from that evidence" *(Hylick v Halweil,* 112 AD2d 400 [1985]).

In view of our determination that the plaintiff did not make out a prima facie case, as a matter of law, we do not reach the other contentions of error made by defendant.

At the close of plaintiff's case, the defendant moved to

dismiss the complaint "on the ground the plaintiff * * * failed to make out a prima facie case on the issue of liability both in terms of negligence and in terms of proximate cause", and the Trial Court, after hearing argument, denied the motion, "without prejudice * * * to any post judgment or verdict motions which may be appropriate". Thereafter, at the close of trial, defendant moved to set aside the verdict and dismiss the complaint on the ground that plaintiff had "[f]ailed as a matter of law to prove proximate cause and failed as a matter of law to prove that the defendant * * * was negligent", and again, the Trial Court, after hearing argument, denied "the motion with exception". We note that defendant's notice of appeal indicates that the "appeal is taken from each and every part of said Judgment as well as the whole thereof".

Since defendant took timely exception to the denial of the motion to set aside the verdict and dismiss the complaint, we find that issue has been preserved for our review (CPLR 4017, 5501). Although defendant has not specifically requested on appeal the relief that the complaint be dismissed, we find that we can grant such relief, based upon our "power to search the record and award summary judgment" *(Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 111 [1984]). Further, the Court of Appeals has held that "[i]t is, of course, axiomatic that, once an appeal is properly before it, a court may fashion complete relief to the appealing party" *(Hecht v City of New York,* 60 NY2d 57, 62 [1983]).

Accordingly, we modify to the extent of vacating the judgment and verdict in favor of the plaintiff against the defendant, and dismiss the complaint. Concur—Murphy, P. J., Carro, Rosenberger and Ross, JJ.

Wallach, J., dissents in a memorandum, as follows: While I agree that this record warrants reversal of the judgment in plaintiff's favor, I part company with the majority insofar as they would dismiss the action instead of remanding it for a new trial. Neither in its briefs, nor even in oral argument, has defendant urged dismissal of the complaint. True, defendant did move for that relief twice during trial, which is simply to say that the point was technically preserved. But, preservation of error in the course of trial is one thing, and presentation of that error at the appellate level is quite another. It is undisputed that, on this appeal, defendant totally abandoned any dismissal argument, seeking only a reversal for new trial based upon other alleged trial errors. For us to dictate, sua sponte, the total extinction of this action—relief which defendant never sought on appeal—is manifestly unfair to the

plaintiff, especially when we do so without the slightest advance notice to him. This court should not reach beyond the scope of the appeal as framed by defendant-appellant, and upon which plaintiff has justifiably relied in formulating his appellate response. To pull the whole rug out from under plaintiff in this fashion is tantamount to a denial of due process of law.

Furthermore, although as a formal matter the majority purports to rest its dismissal on the law alone, its discussion of the case clearly indicates that plaintiff presented a discernible quantum of evidence on every element of his cause of action, and all this in the context of a FELA claim where the acknowledged test is "whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death for which damages are sought." *(Rogers v Missouri Pac. R. R. Co.,* 352 US 500, 506 [emphasis added].) Thus formalities aside, the actuality here is that the reversal rests not only on the law but also upon negative appraisal of the weight of the evidence, and therefore is based upon "the facts" as well. Therefore, outright dismissal exceeds our authority. In *Lane—Real Estate Dept. Store v Lawlet Corp.* (28 NY2d 36), the Appellate Division had reversed a judgment after jury trial in the plaintiff's favor (as the majority is really doing here), "on the law and the facts" (33 AD2d 924). The Court of Appeals ruled that in a jury case the Appellate Division lacks the power to reverse on the facts (even as an alternative), and at the same time dismiss the complaint. Under such circumstances, the Appellate Division "must order a new trial" (28 NY2d, *supra,* at 45), and we should do so here.

In sum, the Appellate Division can reverse on the law and dismiss the complaint only if there was *no* evidence at trial in the plaintiff's favor upon an essential element of his cause of action *(Feinberg v Saks & Co.,* 56 NY2d 206, 211). Once a jury verdict is to be set aside as "against the weight of the evidence" (as defendant urged herein), a new trial is necessary *(Martin v City of Albany,* 42 NY2d 13), and the Appellate Division has so held on numerous occasions *(Barker v Bice,* 87 AD2d 908; *Parksville Mobile Modular v Fabricant,* 73 AD2d 595, 600, *appeal dismissed* 49 NY2d 801; *Evan v Wilson,* 70 AD2d 895; *Ellis Hosp. v Little,* 65 AD2d 644, 646, *mot to dismiss appeal granted* 47 NY2d 951). Our decision in *Labriola v City of New York* (129 AD2d 505, 506, *lv denied* 70 NY2d 604) is not to the contrary. Our affirmance of dismissal by the trial court there rested on plaintiff's failure to plead, and to

offer any evidence in support of, a special duty to him undertaken by the defendant municipality, an essential element of his cause of action.